CORRECTED

# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
## No. 19-1177V
UNPUBLISHED

| | |
|---|---|
| VALARIE WILLIAMS, | Chief Special Master Corcoran |
| Petitioner, | Filed: January 24, 2023 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Special Processing Unit (SPU); Attorney's Fees and Costs; Reasonable Basis; Influenza (Flu) Vaccine; Guillain-Barré syndrome (GBS) |
| Respondent. | |

*Leah V. Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*

*Darryl R. Wishard, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION ON ATTORNEY'S FEES AND COSTS[1]

On August 12, 2019, Valarie Williams filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that she suffered from Guillain-Barré syndrome ("GBS") after receiving an influenza ("flu") vaccine on September 11, 2016. Petition at 1.

After determining that Petitioner had failed to provide sufficient evidence to support her claim, I issued an Order on July 1, 2020, for Petitioner to show cause why her claim should not be dismissed. ECF No. 20. Petitioner filed a response on August 14, 2020, indicating that no further records would be forthcoming and asking that I issue a ruling on

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all Section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

entitlement based on the record as it currently stands. ECF No. 21. On January 19, 2021, I issued my decision dismissing the case for insufficient proof. ECF No. 24.

Petitioner has now requested a fees award. But because she has failed to establish there was a reasonable basis for her claim, she is not entitled to an award of attorney's fees and costs, and the fees motion is therefore denied.

## I.     Procedural History

On August 12, 2019, Valarie Williams filed a petition for compensation for GBS caused by a flu vaccine. ECF No. 1. Petitioner alleged a table claim. Pursuant to the Vaccine Injury Table, GBS is compensable if it manifests within 3-42 days (not less than three days and not more than 42 days) of the administration of an influenza vaccination. 42 C.F.R. § 100.3(a)(XIV)(D). The petition alleges that Petitioner began to experience "neurologic symptoms" shortly after receiving the flu vaccination, and she was diagnosed with GBS "shortly after her neurologic symptoms commenced." Petition at 1. Petitioner later filed medical records, her own affidavit, and a statement of completion on November 25, 2019. ECF No. 9, 10.

During the initial status conference on April 2, 2020, Respondent's counsel raised a potential issue relating to onset, plus pointed out that the record contained evidence of an intervening viral illness that could be causal. In response, Petitioner's counsel stated there could be additional records relevant to such issues, and requested additional time to collect and submit them. ECF No. 12. After a motion for extension to do so (ECF No. 13), Petitioner filed only a letter from Stephen E. Nelson, dated May 13, 2020. Ex. 9.

After a second motion for extension (ECF No. 18), another status conference was held on June 30, 2020. ECF No. 20. During the call, I conveyed my initial reaction to the allegations and the supporting evidence, noting that the onset of Petitioner's GBS was outside the *longest time* ever accepted for a similar non-Table claim (and thus could hardly satisfy the Table's onset requirements at a minimum). Petitioner's counsel indicated he was still attempting to obtain updated medical records, but I questioned whether more records could get around this significant obstacle.

Because of my concern that the claim was likely not viable, I directed Petitioner to respond to a show cause order why this claim should not be dismissed, cautioning counsel against relying on affidavits alone. *Id.* at 2. Indeed, I noted that if the response relied primarily on witness testimony aimed at establishing that Petitioner's symptoms began sooner than the medical records otherwise established, reasonable basis issues might come into play that could impact recovery of fees. *Id.*

Petitioner filed her response to the order to show cause on August 14, 2020. ECF No. 21. Petitioner reported that there were no additional medical records, but noted that certain records "associate [P]etitoner's GBS with her September 11, 2016 flu vaccination." *Id.* at fn.1

In a decision issued on January 19, 2021, I found that onset of Petitioner's GBS occurred 101 days after her vaccination (or approximately fourteen weeks) at the earliest. *Williams v. Sec'y of Health & Hum. Servs.*, No. 19-1177V, 2021 WL 815921 (Fed. Cl. Spec. Mstr. Jan. 19, 2021) (ECF No. 24). I noted that this not only put Petitioner's claim outside the 42-day limit for a viable Table flu-GBS claim, but nearly double the *longest time* accepted in any Program decision for a similar non-Table claim. *Id.* at *4, *citing Chinea v. Sec'y of Health & Human Servs.*, No. 15-095V, 2019 WL 1873322, at *33 (Fed. Cl. Spec. Mstr. Mar. 15, 2019), *review denied*, 144 Fed. Cl. 378 (2019) (onset of the petitioner's GBS occurred eleven to twelve weeks after her vaccination, too far beyond the six- to eight-week medically appropriate timeframe for the occurrence of vaccine-induced GBS); *Barone v. Sec'y of Health & Human Servs.*, No. 11-707V, 2014 WL 6834557, at *13 (Fed. Cl. Spec. Mstr. Nov. 12, 2014) (finding eight weeks (56 days) is the longest timeframe for a flu vaccine/GBS injury ever determined in the Vaccine Program). I also noted that the records relied on by Petitioner to establish onset were created significantly *after* the alleged onset, provided little context with regard to when she first experienced symptoms, and may have included only a self-reported link between her injury and vaccination. *Id.*

On August 18, 2021, Petitioner filed a motion seeking a total of $49,575.54 in attorney's fees and costs. Petition for Reimbursement of Attorneys' Fees and Costs ("Fees App.") (ECF No. 28). Respondent opposes a fee award, maintaining that Petitioner has failed to establish there was a reasonable basis for her claim. Respondent's Response to Motion ("Opp."), filed September 15, 2021. (ECF No. 31). On September 22 2021, Petitioner responded to Respondent's arguments. Petitioner's Reply to Opp. ("Reply") (ECF No. 32).

## II.   Reasonable Basis

### A.   Legal Standard

Motivated by a desire to ensure that petitioners have adequate assistance from counsel when pursuing their claims, Congress determined that fees and costs may be awarded even in unsuccessful claims. H.R. Rep. No. 99-908, at 22 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6363; *see also Sebelius v. Cloer*, 133 S.Ct. 1886, 1895 (2013) (discussing this goal when determining that attorneys' fees and costs may be awarded even when the petition was untimely filed). This is consistent with the fact that "the

Vaccine Program employs a liberal fee-shifting scheme." *Davis v. Sec'y of Health & Human Servs.*, 105 Fed. Cl. 627, 634 (2012). It may be the only federal fee-shifting statute that permits *unsuccessful* litigants to recover fees and costs.

However, Congress did not intend that every losing petition be automatically entitled to attorney's fees. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). Thus, there is a prerequisite to even obtaining fees in an unsuccessful case. The special master or court may award attorney's fees and costs in a case in which compensation was not awarded only if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). And meeting this standard does not guarantee a fee award, since special masters are still empowered by the Act *to limit or deny fees entirely* to unsuccessful litigants even where reasonable basis for the claim is demonstrated. *James-Cornelius on behalf of E. J. v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021) ("even when these two requirements are satisfied, a special master retains discretion to grant or deny attorneys' fees").

As the Federal Circuit has explained, special masters are to apply a two-prong test prior to awarding fees in an unsuccessful case. First, there is a subjective inquiry, in which it is assessed whether the petition was brought in good faith, followed by an objective inquiry, when the claim's reasonable basis is evaluated. *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (quoting *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 289 (2014)). "Good faith is a subjective test, satisfied through subjective evidence." *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020). "[T]he 'good faith' requirement . . . focuses upon whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-0544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).

Cases in which good faith has been found to be lacking often involve petitioners who failed to produce or actively concealed evidence undermining their claims. *Purnell-Reid v. Sec'y of Health & Hum. Servs.,* No. 18-1101V, 2020 WL 2203712 (Fed. Cl. Spec. Mstr. Apr. 6, 2020); *Crowding v. Sec'y of Health & Hum. Servs.,* No. 16-0876V, 2019 WL 1332797 (Fed. Cl. Spec. Mstr. Feb. 26, 2019); *Heath v. Sec'y of Health & Hum. Servs.*, No. 08-0086V, 2011 WL 4433646 (Fed. Cl. Spec. Mstr. Aug. 25, 2011); *Carter v. Sec'y of Health & Hum. Servs.*, No. 90-3659V, 1996 WL 402033 (Fed. Cl. Spec. Mstr. July 3, 1996).

"Additionally, a petitioner's attorney's conduct may also be relevant when evaluating good faith." *Purnell-Reid*, 2020 WL 2203712, at *6. "Counsel still have a duty to investigate a Program claim even if they reasonably find their client to be a credible

individual." *Cortez v. Sec'y of Health & Hum. Servs.*, No. 09-0176V, 2014 WL 1604002, at *8 (Fed. Cl. Spec. Mstr. Mar. 26, 2014). Factors, such as a looming statute of limitations and the conduct of counsel, are properly considered when determining whether good faith exists – but *do not bear* on the claim's objective basis. *Simmons,* 875 F.3d at 636; *Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289 (2018) ("the effort that an attorney makes to investigate a claim or to ensure that a claim is asserted before the expiration of the statutory limitations period . . . are properly evaluated in determining whether a petition was brought in good faith").

"Reasonable basis, on the other hand, is an objective test, satisfied through objective evidence." *Cottingham,* 971 F.3d at 1344. The reasonable basis requirement examines "not at the likelihood of success [of a claim] but more to the feasibility of the claim." *Turner*, 2007 WL 4410030, at *6 (quoting *Di Roma v. Sec'y of Health & Human Servs.,* No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). The Federal Circuit recently explained "that a reasonable basis analysis is limited to objective evidence, and that subjective considerations, such as counsel's subjective views on the adequacy of a complaint, do not factor into a reasonable basis determination." *James-Cornelius on Behalf of E. J. v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021). Stated differently, a claim that on its face (without any weighing of the evidence) is not supported by the materials required by the Vaccine Act for a special master to be able legally to award compensation does not have a reasonable basis. *Good Game v. Sec'y of Health & Hum. Servs.*, 157 Fed. Cl. 62 at 68.

Although clearly easier to meet than the preponderant standard required for compensation, "courts have struggled with the nature and quantum of evidence necessary to establish a reasonable basis." *Wirtshafter v. Sec'y of Health & Human Servs.,* 155 Fed. Cl. 665, 671 (Fed. Cl. 2021). "[I]t is generally accepted that 'a petitioner must furnish *some evidence* in support of the claim.'" *Id.* (quoting *Chuisano,* 116 Fed. Cl. at 288, emphasis added in *Wirtshafter*).

Citing the *prima facie* elements of a successful claim described in Section 11(c)(1), the Federal Circuit recently instructed that the level of the objective evidence sufficient for a special master to find reasonable basis should be "more than a mere scintilla but less than a preponderance of proof." *Cottingham*, 971 F.3d at 1345-46. "This formulation does not appear to define reasonable basis so much as set its outer bounds." *Cottingham v. Sec'y of Health & Hum. Servs.,* 159 Fed. Cl. 328, 333, (Fed. Cl. 2022) (*"Cottingham II"*). "[T]he Federal Circuit's statement that a special master 'could' find reasonable basis based upon more than a mere scintilla does not mandate such a finding." *Cottingham II*, 159 Fed. Cl. at 333 (citing *Cottingham I*, 971 F.3d at 1346). Further, the standard of establishing "more than a mere scintilla of evidence" cannot be met where the evidence

is so contrary that a feasible claim is impossible. *Cottingham v. Sec'y of Health & Hum. Servs.*, 154 Fed. Cl. 790, 795 (2021)

Furthermore, determining reasonable basis is not a static inquiry. Reasonable basis which may have existed when a claim was filed can cease to exist as further evidence is presented, revealing the claim's lack of objective support on an ongoing basis. *Perreira*, 33 F.3d at 1377. In *Perreira,* the Federal Circuit affirmed a special master's determination that reasonable basis was lost after Petitioner's "expert opinion, which formed the basis of the claim, was found to be unsupported by either medical literature or studies." *Id.* at 1376.

### B.    The Parties' Arguments

Respondent does not contest good faith, but asserts that reasonable basis never existed for Petitioner's claim. Opp. at 11. Respondent argues that "the contemporaneous medical records, which had been obtained by petitioner's counsel during the pendency of this claim, fail to support an onset of Petitioner's GBS symptoms at a time potentially reasonable for vaccine causation. Petitioner's claim therefore lacked a reasonable basis when filed, and reasonable basis was never established." *Id.*

In response, Petitioner maintains that there were numerous pieces of evidence submitted that support an earlier onset than was found. Petitioner deems such evidence to be more than a scintilla or "some evidence" that she suffered a table GBS injury, and that while I was critical of some of the evidence, I nevertheless carefully weighed it against other evidence. Petitioner contends that when "a Special Master must weigh contradictory evidence in the record as to a dispositive issue in the case, here the issue of onset, a reasonable basis for bringing the claim at the outset is clearly established." Reply at 7.

### C.    Lack of Reasonable Basis

Petitioner alleged a table claim of GBS following a flu vaccine. Petition at 1. Pursuant to the Vaccine Injury Table, GBS is compensable if it manifests within 3-42 days of the administration of the flu vaccine. 42 C.F.R. § 100.3(a)(XIV)(D). As noted above, non-Table flu-GBS claims can succeed (albeit rarely) if onset exceeds six weeks, but does not go beyond eight (although there is certainly no bright-line rule to that extent).

After a review of the record, I find that Petitioner lacked the reasonable basis for her claim, and that its objective insufficiency was known, or should have been known, as of the time of the case's initiation. In particular, there was never objective evidence that onset of her GBS occurred within the 42-day limit for a viable Table flu-GBS claim, or any slightly longer period accepted for a similar non-Table claim.

Petitioner alleged that she began to experience "neurologic symptoms" shortly after receiving the flu vaccination, and she was diagnosed with GBS "shortly after her neurologic symptoms commenced." Petition at 1. However, Petitioner did not file any materials in support of her allegations at the case's initiation. Petitioner's counsel claimed in a motion for extension that this case was initiated to preserve Petitioner's right to proceed due to the statute of limitations deadline approaching. ECF No. 7. However, it is now clearly established that such considerations do *not* bear on a claim's reasonable basis. *Simmons,* 875 F.3d at 636; *Amankwaa*, 138 Fed. Cl. at 289 ("the effort that an attorney makes to investigate a claim or to ensure that a claim is asserted before the expiration of the statutory limitations period . . . are properly evaluated in determining whether a petition was brought in good faith"). Thus, at the time that the petition was filed, there was no evidence providing objective support for a reasonable onset timeframe.

Petitioner's subsequently-filed records and affidavit evidence did not remediate this lack of objective support. ECF Nos. 9, 10. Petitioner's affidavit states that she had not filed any civil action or received compensation for her injury, but provides no details regarding onset of her injury. The medical records also offer nothing to substantiate her claim that onset of her GBS occurred within 42 days of her vaccination.[3] To the contrary, they consistently state that Petitioner's symptoms did not begin until *over 100 days* after her September 11, 2016 vaccination. *See*, *e.g.*, Ex. 3 at 5 (record from July 13, 2017 stating that she woke on December 25, 2016, and her "body was paralyzed"); Ex. 5 at 122 (record from January 27, 2017 stating onset of Petitioner's GBS was December 25, 2016). There is a single record indicating that Petitioner began feeling fatigue "shortly" after her flu vaccine, but again this does not provide any context or insight into the onset of Petitioner's GBS. Further, the record was from *July 13, 2017*, ten months after her vaccination and seven months after her GBS diagnoses. Ex. 3 at 5 (Petitioner reported shortly after a flu shot in September of 2016 she "began to feel more fatigued with less exercise tolerance"). And no other records corroborate an earlier onset (and if they did, they would be contrary to the fact that Petitioner's GBS only became acute several months later – inconsistent with GBS's acute/monophasic character).

Accordingly, at the time Petitioner filed her statement of completion (also on

_____

[3] Most of these records provide little context (temporal or otherwise) with regard to the onset of her injury, only stating that Petitioner developed GBS "after" a flu vaccine. *See*, *e.g.*, Ex. 2 at 103 (record from June 22, 2017 stating "developed GBS *after* getting a Flu Vaccine") (emphasis added); 95 (record from July 7, 2017 stating "Pt was dx with Guillain [sic] Barre Syndrome following a vaccine…"); 73-74 (record from November 16, 2018 stating Petitioner "is a Navy Reservist and developed GBS after getting a Flu Vaccine . . . GBS after flu shot."). Further, it appears Petitioner may have self-reported the link between her flu vaccine and GBS. *See* Ex. 6 at 13 (record from March 19, 2018 stating "Patient reports h/o GBS secondary to a flu vaccine.").

November 25, 2019) stating that "the record in this matter is now complete" (ECF No. 10) Petitioner still had not filed any objective evidence, such as medical records or a medical opinion, establishing that she met the onset requirements for GBS following a flu vaccination.

Onset issues were raised during the initial status conference on April 2, 2020. In response, Petitioner expressed the desire to seek other relevant evidence supporting the claim. ECF No. 12. But after a motion for extension (ECF No. 13), Petitioner only filed a letter from Stephen E. Nelson, dated May 13, 2020. Ex. 9. Mr. Nelson stated that he had known Petitioner for over five years and was in a relationship with her. Mr. Nelson also stated that the week after she received her flu shot, Petitioner experienced weakness, and thereafter additional symptoms began such as sleeplessness and aching in her feet and legs. The letter further stated that Petitioner's legs gave out around Thanksgiving of 2016. At that time, Mr. Nelson allegedly took Petitioner to Keesler AFB Hospital in Biloxi Mississippi (although there is no record of any such hospital visit).

While I noted that this letter provided some support for an initial reaction to the vaccine and potentially an earlier onset, I found it ultimately not persuasive. *Williams*, 2021 WL 815921, at *4. And given the context and the timing of this evidence, it does not support a finding of reasonable basis. First, it is not objective evidence, but a signed letter from an individual who is "in a relationship" with Petitioner. Second, it is not corroborated by any objective medical evidence despite referencing a specific hospital visit.

After an additional motion for extension (ECF No. 18), a second status conference was held on June 30, 2020. ECF No. 20. During the call, my initial reaction to the allegations and the supporting evidence was conveyed to the parties. I specifically indicated that the onset of Petitioner's GBS was outside the *longest time* ever accepted for a non-Table flu-GBS claim, and questioned how such a delayed onset could satisfy the Table requirements alleged in the petition. Petitioner's counsel indicated he was still attempting to obtain updated medical records and affidavit evidence. However, I also questioned how updated medical records would address the issues with the onset of Petitioner's GBS. For those reasons, I directed Petitioner to respond to a show cause order why this claim should not be dismissed. I also cautioned Petitioner's counsel that if the response to the show cause order relied primarily on witness testimony aimed at establishing that Petitioner's symptoms began sooner than the plethora of medical records establish, reasonable basis issues could be raised. ECF No. 20.

Petitioner filed her response to the order to show cause on August 14, 2020. ECF No. 21. Petitioner reported that there were no additional medical records, but noted that certain records "associate [P]etitoner's GBS with her September 11, 2016 flu vaccination."

The above reveals the lack of minimal objective basis for bringing the claim – the elements of which were clearly set forth in the Vaccine Table. Indeed, the claim's deficiencies go beyond the Table elements, extending to requirements that apply to almost all vaccine claims.

Petitioner cannot (and could not as of filing) meet specific Table criteria for GBS caused by a flu vaccine. As laid out above, the relevant Table injury requires onset within 3-42 days, but none of Petitioner's objective records provide anything even close to that. Further, the objective evidence strongly indicates that onset of Petitioner's injury occurred 101 days after her vaccination - significantly longer than the *longest time* accepted for a similar non-Table claim. *Barone*, 2014 WL 6834557, at *13.

Petitioner's counsel argues that there are 11 pieces of evidence that support an earlier onset than I found in this case, and thus that objective proof establishes reasonable basis. However, as detailed in the Decision dismissing this case, the records cited by Petitioner are vague, created significantly after her GBS onset, and potentially included only self-reported medical history unsupported by medical records. *Williams,* 2021 WL 815921, at *4 (describing the records cited by Petitioner as created significantly after her alleged onset, and providing little context (temporal or otherwise) with regard to the onset of her injury).

Petitioner further argues that reasonable basis exists because my evaluation of the claim's merits involved weighing evidence on the onset issue pro versus con. Reply at 7. But this argument confuses the *process* of deciding disputed issues with the *evidence* weighed as a result of that process. Special masters inherently weigh evidence when deciding factual disputes. See *Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Engaging with evidence to accomplish this task does not mean, however, that the evidence considered *itself* possesses objective value.

In *Williams*, I spent three paragraphs describing the deficiencies in Petitioner's evidence and why there was not preponderant evidence to establish onset of GBS within 3-42 days, and ultimately why Petitioner was unsuccessful in establishing entitlement. *Williams,* 2021 WL 815921 at 4-5. In particular, I noted that the contemporaneous medical records persuasively (and almost wholly) contradicted Petitioner's claims and establish onset well after Petitioner's alleged GBS manifested. Claims of an earlier GBS onset are so contrary to the medical records that a feasible claim was impossible to establish. The evidence offered for Petitioner's version of onset was not merely outweighed by the contrary evidence – it was *itself* not sufficiently objective.

Petitioner's counsel argues that he submitted a significant *amount* of evidence, and thus more than a mere scintilla. Reply at 8-9 ("Ms. Williams provided almost 1,600 pages of medical records."). But for reasonable basis purposes, what matters is the *quality* of the evidence. Even though there were almost 1,600 pages of medical records, nothing contained *within* those many pages objectively establishes onset possibly occurred within the timeframe required to allege a passable flu-GBS claim (whether Table or not). Petitioner's witness statements to the contrary were uncorroborated – and it is well understood that a claimant's *bare* statements are not grounds for recovery (for if they were, claimants would merely need to *allege* the elements of their claim, and not have to also substantiate them with independent proof).

At bottom, this claim lacked critical objective support for *either* a flu-GBS Table claim, or a causation-in-fact claim in which a petitioner must meet all three of the causation prongs set forth in *Althen v. Sec'y of Health & Hum. Servs.*, 418 F.3d 1274, 1277 (Fed. Cir. 2005)[4] – including that onset occurred in a "medically acceptable timeframe" when measured from the time of vaccination. *See id.* at 1281 (equating "proximate temporal relationship" with "medically-acceptable temporal relationship"). Flu-GBS claims are common in the Program, and the general contours of such a claim (which can be gleaned from numerous decisions) well-understood. It behooved counsel to ensure, at a minimum, that the temporal relationship between vaccination and onset was reasonable before filing this case, by looking at least for medical record evidence suggesting a reasonable onset. Because this case was filed without any such evidence, it lacked reasonable basis from its outset.

### Conclusion

The Vaccine Act permits an award of reasonable attorney's fees and costs even to an unsuccessful litigant only if the litigant establishes the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought. Section 15(e)(1). In this case, I find that Petitioner's claim is insufficiently supported by objective evidence for a finding of reasonable basis. **Petitioner's motion for attorney's fees and costs is therefore DENIED.**

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[4] The prongs set forth in *Althen* are (1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury." *Althen*, 418 F.3d at 1278.